IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KRISTEN GRIM, | : | CIVIL ACTION |
|---|---|---|
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 18-2231 |
| | : | |
| MAY GRANT ASSOCIATES and | : | |
| SUSQUEHANNA VALLEY WOMEN'S | : | |
| HEALTHCARE, P.C, | : | |
| *Defendants.* | : | |

## MEMORANDUM

### I. INTRODUCTION

Plaintiff Kristen Grim was terminated from her employment with May Grant Associates and Susquehanna Valley Women's Healthcare, P.C. ("Defendants") on February 28, 2018. Plaintiff contends that her termination was based on her having made reports to Defendants regarding her supervisor altering patient charts and equipment malfunctioning. Plaintiff alleges that her firing violated Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. §1421 *et seq.*, as well as Pennsylvania public policy, among other laws. *See generally* Complaint (ECF No. 1). Before the Court is Defendants' Motion to Dismiss Counts V (Retaliation and Wrongful Termination in Violation of Pennsylvania Whistleblower Law) and VI (Retaliation and Wrongful Termination in Violation of Pennsylvania Public Policy) of the Complaint (ECF No. 8), Plaintiff's Response (ECF No. 10), and Defendants'

1

Reply (ECF No. 11). For the reasons that follow, the Court grants Defendants' Motion to Dismiss Counts V and VI of the Complaint.

## II. BACKGROUND[1]

Plaintiff alleges that she was employed by Defendants May Grant Associates and Susquehanna Valley Women's Healthcare, P.C., from October 5, 2016 until her discharge on February 28, 2018. Complaint at ¶9. Plaintiff alleges that "Defendant receives federal and state aid through Medicare and Medicaid funding for their services." *Id.* at ¶40. Plaintiff alleges that, while working for Defendants, she was employed as a medical technologist and reported directly to Sharon Barnhart, the lab supervisor. *Id.* As a medical technologist, Plaintiff alleges that she "performed maintenance and quality control on instruments, ran patient samples on instruments, performed phlebotomy services and gave injections, billed lab tests, and communicated patient results." *Id.* at ¶10. Plaintiff alleges that, beginning in the summer of 2017, she noticed her supervisor "altering patient charts regarding CO2 levels." *Id.* at ¶12. Plaintiff alleges that she informed the Head of Human Resources for Defendants, the practice manager, and the physician overseeing the lab of Defendants of this observation. *Id.* at ¶14. Plaintiff alleges that she also "noticed that equipment used in lab testing was not being properly maintained." *Id.* at ¶16. Plaintiff alleges that she informed a fellow medical

---

[1] The following background is from the Complaint, ECF No. 1.

2

technologist, the lab supervisor, the Head of Human Resources for Defendants, the practice manager, and the physician overseeing Defendants' lab of this observation. *Id.* at ¶¶17-18. The fellow medical technologist whom she informed was "responsible for maintaining the equipment for lab testing," and "felt the equipment was fine and no action was needed to maintain the [allegedly] deficient equipment." *Id.* at ¶19.

Plaintiff alleges that she "communicated her fears and concerns about the alterations and her belief that equipment was malfunctioning leading to inaccuracy in the testing results and the negative affect [sic] this could have on patient safety." *Id.* at ¶20. Plaintiff alleges that she "sent documentation on August 23, 2017 regarding" her observation of the allegedly malfunctioning equipment and "followed up on September 7, 2017 regarding these issues." *Id.* at ¶¶22-23. Plaintiff alleges that she sent a "lengthy email regarding the issues in the lab and. . . the hostilities she was experiencing in the workplace" on September 22, 2017 and October 26, 2017. *Id.* at ¶24. Plaintiff alleges that she sent a letter to Defendants in December 2017 "detailing the hostilities at work, her diagnosis of anxiety, and how her anxiety had been exacerbated by the hostile conditions at work." *Id.* at ¶25. Plaintiff alleges she sent additional emails on January 17, 2018 and January 25, 2018 to the practice manager and the Head of Human Resources of Defendants relating "her concerns about the working conditions." *Id.* at ¶¶27-28. Plaintiff

3

alleges that she emailed the practice manager, the physician overseeing Defendants' lab, and the Head of Human Resources of Defendants, "stating that the conditions were getting worse," and that her co-worker "had witnessed the hostilities." *Id.* at ¶¶29-30. Plaintiff alleges that she again emailed the lab supervisor, the practice manager, the physician overseeing Defendants' lab, and the Head of Human Resources of Defendants on February 7, 2019 "seeking clarifications as to what constitutes as mislabeled specimen," since she had "perceived [] clinical violations of the law" relating to this questioning. *Id.* at ¶31. Plaintiff alleges that the response she received led her to "believe that the lab was being run in an unethical, illegal, and inappropriate way." *Id.* at ¶32. Plaintiff alleges she was terminated on February 28, 2019. *Id.* at ¶¶33, 38. Plaintiff alleges that she "filed a complaint with the Department of Health Bureau of Laboratories after her termination and received notification that the laboratory of the Defendants was not in compliance with Clinical Laboratory Improvement Amendments of 1988." *Id.* at ¶42.

The Complaint asserts seven causes of action: Count I (Family and Medical Leave Act ("FMLA") Interference); Count II (FMLA Retaliation); Count III (Discrimination/Hostile Work Environment in violation of the Rehabilitation Act); Count IV (Retaliation in violation of the Rehabilitation Act); Count V (Retaliation and Wrongful Termination in violation of Pennsylvania Whistleblower Law);

Count VI (Retaliation and Wrongful Termination in violation of Pennsylvania Public Policy); Count VII (Retaliation and Wrongful Termination in violation of Patient Safety and Quality Improvement Act).

On July 2, 2018, Defendants filed a Motion to Dismiss Counts V and VI of the Complaint for failure to state a claim. ECF No. 8. This Court heard counsels' arguments on Defendants' Motion to Dismiss Counts V and VI for failure to state a claim on January 4, 2019.

In Count V of the Complaint, Plaintiff asserts claims under the Pennsylvania Whistleblower Law ("PWL"), 43 P.S. §1423(a), alleging that Plaintiff was terminated in retaliation for her having made a good faith complaint of wrongdoing or waste. In Count VI of the Complaint, Plaintiff alleges she was terminated in violation of Pennsylvania public policy. Plaintiff alleges that there exists a "public policy of the Commonwealth of Pennsylvania in the protection of public health, safety and welfare to ensure that patients do not receive inadequate levels of care by medical staff such as that complain of by Plaintiff." *Id.* at ¶107. Plaintiff further alleges that "Defendants' termination of Plaintiff in retaliation for refusing to violate these regulations constitutes a reckless disregard for the public welfare and patients in its care." *Id.* at ¶113.

## III. DISCUSSION

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 550 U.S. at 679).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 550 U.S. at 675). "Second, [the court] should identify allegations that, 'because

6

they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 550 U.S. at 679). Third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 550 U.S. at 679).

### A. Count V: Retaliation and Wrongful Termination in Violation of PWL.

The Pennsylvania Whistleblower Law states that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. 1423(a).

Plaintiff alleges that she was terminated in violation of the PWL because (1) Defendants are a "public body" as defined under the PWL since Defendants are recipients of "Medicare and/or Medicaid and potentially other sources of public funding for the provision of medical services," and Defendants terminated Plaintiff in retaliation for her making a good faith report of Defendants' wrongdoing and/or waste; (2) even if Defendants are not a "public body," Pennsylvania's Medical Care Availability and Reduction of Error ("MCARE") Act extends the PWL

7

protections to health care workers who report the occurrence of a serious event or incident, and thus Defendants' allegedly retaliatory termination of Plaintiff for making a good faith report of Defendants' wrongdoing or waste was still in violation of the PWL; (3) even if MCARE does not extend the PWL protections to employees of Defendants, Defendants still terminated Plaintiff for making a good faith report of an instance of waste by an employer as defined in the PWL. *See generally* Response in Opp. To Def.'s Mot. To Dismiss (ECF No. 10).

Defendants argue in their Motion to Dismiss and Reply that Plaintiff's claim of a violation under the PWL fails because: (1) Defendants are not a public body as defined in the PWL, (2) the MCARE Act does not extend the protections of the PWL to Plaintiff because Defendants are not a "medical facility" nor did Plaintiff report the occurrence of a serious event or incident, (3) Plaintiff has failed to allege that Defendants committed wrongdoing or waste, and (4) Plaintiff has failed to allege a causal connection between the alleged reports of wrongdoing and her termination from employment. *See generally* Def.'s Mot. To Dismiss (ECF No. 8); Def.'s Reply (ECF No. 11).

### 1. Defendants Are Not a Public Body Under the PWL
First, we consider whether Defendants are a "public body" under the PWL. The PWL defines "public body" as:

> (1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.
> (1.1) The General Assembly and its agencies.
> (2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.
> (3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

42 P.S. § 1422

Plaintiff has alleged that Defendant May Grant Associates is a "medical clinic," and Defendant Susquehanna Valley Women's Health Care, P.C. is a "private corporation which partners with other entities such as Defendant May Grant Associates" to offer OBGYN services in Lancaster, PA." Complaint at ¶¶6-7. Plaintiff further alleges that "Defendants are recipients of Medicare and/or Medicaid and potentially other sources of public funding for the provision of medical services." Complaint at ¶98.

Neither the Supreme Court of Pennsylvania nor the Third Circuit has ruled on whether a private corporation that receives money through Medicare or Medicaid programs for services provided is considered a "public body" as defined in the PWL. *See Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 407 (M.D. Pa. 2016); *Lee v. Comhar Inc.*, 244 F. App'x 464, 467 (3d Cir. 2007).

However, courts in the Eastern District of Pennsylvania have found that the "receipt of Medicaid reimbursements is insufficient to make an otherwise private entity[] a public body subject to Whistleblower Law liability," *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 743 (E.D. Pa. 2011).[2] Other district courts in Pennsylvania have similarly concluded that the "Supreme Court of Pennsylvania would hold that the receipt of Medicaid and Medicare reimbursements, without more, is insufficient to transform a private employer into a 'public body' subject to the Pennsylvania Whistleblower Law." *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 409 (M.D. Pa. 2016).

This Court is similarly persuaded that private entities who accept Medicaid or Medicare funding do not fall into the definition of "public body" under the PWL. The 2014 Amendments to the PWL expanded the definition of "employer" to include any individual, partnership, association, or corporation which "*receives* money from a public body to perform work or provide services. . . to a public body," yet the Pennsylvania legislature failed to expand the definition of "public body," which includes "[a]ny other body which . . . is *funded* in any amount by or

---

[2] Although some courts in the Eastern District of Pennsylvania more recently have acknowledged that the 2014 amendments to the PWL expanded its coverage such that a "non-profit entity that merely received Medicaid funding" may be "subject to liability under the PWL," this recognition was based only on the expansion of the definition for "employer" and not for "public body." *Gratz v. Ruggiero*, No. CV 16-3799, 2017 WL 2215267, at *8 (E.D. Pa. May 19, 2017).

through Commonwealth or political subdivision authority." 43 P.S. § 1422 (emphasis added); *Gratz*, 2017 WL 2215267 at *8. The difference between an entity that "receives" public funds and one that is "funded" by political subdivision authority is significant. "The words 'funded in any amount by or through' are naturally read to denote money that is specifically appropriated by a governmental unit. Such appropriations may come in the form of periodic or one-time payments, but they are not controlled by the whims of patients eligible for Medicaid." *Tanay*, 810 F. Supp. 2d at 743–44; *see also Cohen v. Salick Health Care, Inc.*, 772 F.Supp. 1521 (E.D. Pa. 1991). Private entities that simply serve individuals who pay for their medical needs with Medicaid and Medicare, but do not otherwise receive any funding or grants from the government, should not be considered a public body under the PWL. A contrary result would unreasonably expand the scope of the PWL to include any private business that accepts payment from a recipient of government assistance, i.e. a grocery store that accepts food stamps. In limiting the retaliation provision to the report of wrongdoing by a "public body," the legislature could not have intended such a large scope.

Thus, as Plaintiff has alleged only that Defendants are the "recipients of Medicare and/or Medicaid and potentially other sources of public funding for the provision of medical services," Plaintiff has not pled sufficient facts to show that Defendants are "funded by or through Commonwealth or political subdivision

11

authority." Complaint at ¶98. Thus, Plaintiff has failed to state that Defendants are a "public body" under the PWL.

### 2. The MCARE Act Does Not Apply to Plaintiff

Plaintiff has argued in the alternative that, even if the Court found that the Defendants did not qualify as a "public body" under the PWL, the MCARE Act extends the PWL protections to health care workers who report the occurrence of a serious event or incident, and thus Defendants' allegedly retaliatory termination of Plaintiff for making a good faith complaint of Defendants' wrongdoing or waste was still in violation of the PWL. This Court disagrees. The MCARE Act states:

> A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) or (b) shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

40 Pa. Stat. Ann. § 1303.308.

Under the MCARE Act, "healthcare worker" is defined as "[a]n employee, independent contractor, licensee or other individual authorized to provide services in a medical facility," and both of the definitions for "serious event" and "incident" require that the event involve the "clinical care of a patient in a medical facility." 40 Pa. Stat. Ann. § 1303.302. A "medical facility" is defined as "[a]n ambulatory surgical facility, birth center, hospital or abortion facility." *Id.*

12

As previously stated, Plaintiff has alleged only that Defendant May Grant Associates is a "medical clinic," and Defendant Susquehanna Valley Women's Health Care, P.C. is a "private corporation which partners with other entities such as Defendant May Grant Associates" to offer OBGYN services in Lancaster, PA. Complaint at ¶¶6-7. Plaintiff has not pled any facts to support the conclusion that either Defendant is an "ambulatory surgical facility, birth center, hospital or abortion facility." 40 Pa. Stat. Ann. § 1303.302.[3] Furthermore, even if Defendants did qualify as a "medical facility" under MCARE Act, the Act also requires that the reported event be a "serious event or incident." An "incident" is defined as:

> An event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient. The term does not include a serious event.
>
> 40 Pa. Stat. Ann. § 1303.302[4]

---

[3] Plaintiff attempts to attach screenshots of the Defendants' webpage to its Response in Opposition to Defendants' Motion to Dismiss to show that Defendants are a medical facility under the MCARE Act. However, in responding to a motion to dismiss under 12(b)(6), "[a] party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." *Hammond v. City of Phila.*, 2001 WL 823637, at *2 (E.D. Pa. 2011). Thus, we rely only on the facts alleged in the Complaint.

[4] A "serious event" requires that the event involving the clinical care of a patient actually result in "death" or an "unanticipated injury" of that patient. 40 Pa. Stat. Ann. § 1303.302. Plaintiff has clearly not alleged that any patient died or suffered an unanticipated injury.

13

Plaintiff has alleged only that she reported that her supervisor was "altering patient charts regarding CO2 levels," that "equipment used in lab testing was not being properly maintained" and was "malfunctioning," and that there were "inaccurate testing results." Complaint at ¶¶12-22.[5] Even construing all allegations and inferences in a light most favorable to the Plaintiff, the facts alleged are entirely too vague and ambiguous to allow the Court to infer that either of the alleged observations could have resulted in the injury of any patient. There are simply no allegations that there was any "event, occurrence or situation involving the clinical care of a patient . . . which could have injured the patient," since there are no allegations that the supervisor altering CO2 levels on patient charts or the alleged malfunctioning and improperly maintained equipment used in lab testing could have injured a patient. Nor is it a reasonable inference that such an injury to any patient "could have" occurred. Plaintiff is thus not entitled to the protections of the PWL through the cover of the MCARE Act.

---

[5] Plaintiff alleges that she emailed certain employees of Defendants "seeking clarifications as to what constitutes as mislabeled specimen in the hopes that they would provide insight and deal with what she reasonably perceived as clinical violation of the law," and that the "response the Plaintiff received further led her to reasonably believe that the lab was being run in an unethical, illegal, and inappropriate way." Complaint at ¶¶31-23. However, Plaintiff never alleges that she informed anyone at Defendants that there was a violation of the law concerning mislabeled specimen and therefore this cannot be considered a "good faith report" of wrongdoing or waste.

### 3. Plaintiff Has Not Shown Her Termination Was Retaliation for a Good Faith Report of Waste Committed by Defendants

Lastly, Plaintiff argues that, even if Defendants are not considered a "public body" and Plaintiff is not covered under the MCARE Act, Defendants are still liable under the PWL because her termination was in retaliation for Plaintiff making a good faith report of an instance of *waste* by an employer as defined in the PWL. The Court does not agree.

"Waste" is defined under the PWL as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 P.S. § 1422. Plaintiff has alleged that she reported that her supervisor was altering patient charts and that the lab testing equipment was improperly maintained and malfunctioning, which resulted in "false outcomes" for which Defendants unlawfully billed its patients, which wasted Medicare and/or Medicaid funding. Complaint at ¶¶6, 7, 12, 16, 22, 99. Even if the Court does "accept as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them," it is not plausible that either of these allegations could be considered "waste" by Defendants because Plaintiff has not actually pled how either resulted in a substantial abuse or misuse of Medicare and/or Medicaid funds. *Tatis*, 882 F.3d at 426. There are no facts pled linking the alleged altering of $CO_2$

15

levels on a patient's chart or malfunctioning lab testing equipment to any actual inaccurate or unlawful billing except broad conclusions of theoretically wasted Medicare and Medicaid funds. Plaintiff baldly states that Medicare and Medicaid funds were wasted but does not plead sufficient factual matter to allow the Court to conclude this result is plausible. Complaint at ¶99. Plaintiff's unsupported conclusions are not entitled to the assumption of truth. *See Connelly*, 809 F.3d at 787.

Lastly, Plaintiff has failed to plead causation between her reporting these observations and her termination. "In order to sustain a Whistleblower Law claim, a plaintiff must plead facts or surrounding circumstances that support an inference that the report of waste led to her dismissal." *Bennett v. Republic Servs., Inc.*, 179 F. Supp. 3d 451, 456 (E.D. Pa. 2016). Although Plaintiff claims in her Response in Opposition to Defendants' Motion to Dismiss, ECF No. 10, "Plaintiff's pleadings are sufficient at this stage to infer that her emails from August 2017 through February 2018" show temporal causation, since she was fired in February 2018, none of the alleged emails after October 26, 2017 mention any reports of wrongdoing or waste. Complaint at ¶¶25-31. In the Complaint, Plaintiff alleges that she reported that her supervisor was altering the $CO_2$ levels on patient charts and that lab testing equipment was not properly maintained (though she does not specify a date for either of these reports). Plaintiff further alleges that she reported

16

malfunctioning equipment and inaccurate testing results on August 23, 2017, followed up on these issues September 7, 2017, and reiterated in communications between September 22, 2017 and October 26, 2018 "issues in the lab." Complaint at ¶¶22-24. The alleged communications made after October 26, 2017 relate only to the "hostilities" at work, her condition, and her requests for accommodations. Complaint at ¶¶25-32.

Plaintiff has thus failed to sufficiently allege an "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" that would indicate causation. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Thus, for the reasons stated above, Defendants' Motion to Dismiss Count V of Plaintiff's Complaint is granted.

B. Count VI: Retaliation and Wrongful Termination in Violation of Pennsylvania Public Policy.

In Pennsylvania, although the strong "presumption of all non-contractual employment relations is that it is *at-will*," an employee is "entitled to bring a cause of action for a termination of that [*at-will*] relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 314 (2000). To determine what constitutes public policy, one must "examin[e] the precedent within Pennsylvania, looking to our own Constitution,

17

court decisions and statutes promulgated by our legislature." *Id.* at 316. Furthermore, "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Shick v. Shirey*, 552 Pa. 590, 602 (1998). "Where the public policy claimed to be violated is not 'clear,' a cause of action for wrongful discharge has not been recognized." *Howell v. PPL Servs. Corp.*, 232 F. App'x 111, 114 (3d Cir. 2007) (*citing McGonagle v. Union Fidelity Corp.*, 556 A.2d 878, 884 (1989)). This public policy exception to an employer's right to terminate an at-will employee for any reason is "not to be liberally construed." *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 738 (E.D. Pa. 2011).

Plaintiff alleges that it is a "public policy of the Commonwealth of Pennsylvania in the protection of public health, safety and welfare to ensure that patients do not receive inadequate levels of care by medical staff." Complaint at ¶108. Plaintiff alleges that she was unlawfully discharged by Defendants because she refused to violate Pennsylvania law by "permitting or allowing false outcomes to be portrayed to patients of the clinic," or permitting or allowing the "altering the status of a blood test." Complaint at ¶109. Plaintiff alleges that, "[a]s a licensed health care provider, the Defendants[] are aware of its [sic] responsibility to the public that its [sic] Pennsylvania facilities operate in compliance with Pennsylvania healthcare regulations." Complaint at ¶113.

18

Plaintiff has not sufficiently identified a "clear mandate of public policy" that Defendants violated in terminating Plaintiff. *McLaughlin*, 561 Pa. at 314. Plaintiff's allegations as to a violation of Pennsylvania's public policy for the protection of public health, safety and welfare implicates "general considerations of supposed public interest" as opposed to the "reference to the laws and legal precedents" required to properly state a claim for termination in violation of a Pennsylvania public policy. *Shick*, 552 Pa. at 602. Plaintiff's proffered basis for her public policy claim is "too vague and lacking in specifics to mount up to a *prima facie* showing that the claimed misconduct on the part of the employer violated the public policy of" Pennsylvania. *McGonagle*, 383 Pa. Super. at 236 (1989). Plaintiff has failed to plead "facial plausibility" that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," since the public policy allegedly violated is not clearly stated. *Ashcroft v. Iqbal*, 556 U.S. at 678.

Furthermore, Plaintiff does not allege in the Complaint that she was terminated for making a report to the Department of Health, Bureau of Laboratories, as claimed in her Response in Opposition to Defendants' Motion to Dismiss, ECF No. 10, but simply that she "filed a complaint with the Department of Health Bureau of Laboratories after her termination and received notification that [Defendants'] laboratory . . . was not in compliance with Clinical Laboratory

19

Improvement Amendments of 1988." Complaint at ¶42. Yet, even if Plaintiff had so alleged, Plaintiff made the complaint to the Department of Health, Bureau of Laboratories only after she was already terminated and thus Plaintiff cannot allege she was terminated as a result of making such a complaint. Under Pennsylvania law, the "*reason*" for the termination of an at-will employee must "offend[] a clear mandate of public policy." *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 323 (3d Cir. 1993). If Plaintiff was already terminated when she reported the alleged violations to the Department of Health, Bureau of Laboratories, this could not be the reason for her termination. Thus, for the reasons stated above, Defendants' Motion to Dismiss Count VI of Plaintiff's Complaint is granted.

## IV. CONCLUSION

For all these reasons, Defendants' Motion to Dismiss Claims V and VI of the Complaint will be granted. Thus, Counts V and VI against Defendants in this matter are hereby dismissed without prejudice. An appropriate order will follow this Memorandum.

DATED: 1-28-2019

BY THE COURT:

CHAD F. KENNEY, JUDGE

20